FILED
United States Court of Appeals
Tenth Circuit

February 1, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

LORETTA GILLIARD,

    Defendant - Appellant.

No. 17-3274
(D.C. No. 2:17-CR-20056-CM-1)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **MATHESON**, and **PHILLIPS**, Circuit Judges.
_____

Loretta Gilliard was indicted on a drug conspiracy charge after one of her

alleged heroin customers overdosed and almost died.  The magistrate judge ordered

pretrial detention, and the district court denied a motion to revoke the detention

order.  We must evaluate whether pretrial detention is appropriate under the Bail

Reform Act.  *See* 18 U.S.C. § 3142.  Ms. Gilliard argues that (1) the district court's

findings are not sufficiently detailed to comply with § 3142(i); and (2) the district

court erred in ordering detention without discussing whether any release conditions

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

could satisfy concerns that she is a flight risk or a danger to the community. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3145(c), we affirm.

## I.    Background

A federal grand jury returned an indictment against Ms. Gilliard, charging her with one count of conspiracy to distribute heroin, with serious injury resulting from the use of such heroin, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), (b)(1)(c), and 846.  If convicted, she faces a statutory minimum sentence of 20 years in prison.  No trial date has been set.

The government alleges that Ms. Gilliard engaged in over 100 transactions involving heroin over the course of a year, two of which were controlled buys by a confidential informant.  Most of the sales involved the same customer, who ultimately suffered a near-fatal overdose.  After the customer identified Ms. Gilliard as the supplier, a detective located her in Texas by tracking the use of her welfare-benefits card issued by the State of Missouri.  Ms. Gilliard was arrested in Texas and transferred for proceedings before the United States District Court for the District of Kansas.

### A.  Detention Hearing

The magistrate judge conducted a detention hearing on November 28, 2017, at which he took judicial notice of the factual information in the pretrial services report that was prepared in Texas.  The report states that Ms. Gilliard is a 34-year-old woman with a history of substance abuse and mental health issues and a criminal history dating back to age 18.  Her convictions include traffic offenses, stealing,

2

forgery, selling sexual relations, felony obstruction of the legal process, and aggravated escape from a correctional facility. The report lists numerous outstanding warrants, failures to appear, and probation revocations related to these convictions. Although Ms. Gilliard objected to a few entries regarding outstanding bench warrants in municipal cases, she did not object to the remainder of the criminal history.

The detective who supervised the investigation of Ms. Gilliard testified for the government. After that testimony, Ms. Gilliard asked to be released into Majestic House, a women's transitional living home in Kansas City, Missouri. She expressed her belief that beds were available, but did not present documentation to that effect. She described the facility as a community for drug- and alcohol-free residents, with a curfew imposed for the first 90 days, 12-step meetings, and limits on visitation. To alleviate any concerns arising from her aggravated-escape conviction, she explained that back in 2007 she failed to report back to a halfway house for a few hours after her leave pass expired, though she later acknowledged the timing was closer to 20 hours. The government responded by emphasizing that Ms. Gilliard has nine failures to appear—three from the last four years—that demonstrate her unwillingness to comply with the conditions imposed by other courts. The government also expressed concern about placing a heroin dealer into Majestic House because its inhabitants are trying to overcome various addictions.

The magistrate judge found by a preponderance of the evidence that no condition or combination of conditions will reasonably assure Ms. Gilliard's appearance as required because she poses a serious flight risk. In addition to

3

questioning Ms. Gilliard's character and truthfulness, the magistrate judge explained that a flight-risk assessment takes into account both the risk of physical flight and whether a defendant is reasonably amenable to supervision. He then concluded that Ms. Gilliard's drug history, failures to appear, and failures to comply with release conditions show that she is not amenable to supervision. The magistrate judge did not find by clear and convincing evidence that Ms. Gilliard presented a danger to the community, however.

The magistrate judge ordered pretrial detention. He supplemented his oral ruling with a written detention order, which included findings of fact for each factor in 18 U.S.C. § 3142(g) and applied the rebuttable presumption contained in § 3142(e).

**B.  Hearing on Motion to Revoke**

Ms. Gilliard filed a motion to revoke the pretrial detention order. The district court held a motions hearing on December 21, 2017. The substance of the proceedings paralleled the initial detention hearing:  the district court took judicial notice of the pretrial services report from Texas, as well as a more recent one out of Kansas; the same detective testified on the government's behalf and summarized the evidence collected against Ms. Gilliard and her criminal record; and Ms. Gilliard again requested release to Majestic House. The end result was the same, though the district court found Ms. Gilliard to be a danger to the community as well.

Applying de novo review, the district court invoked the presumption of detention under § 3142(e)(3). It then emphasized that it had analyzed all of the

4

§ 3142(g) factors and proceeded to address them one by one.  For the first factor, the district court stated that Ms. Gilliard was "charged with a very serious offense" involving a controlled substance, which led to physical harm or injury to another individual.  Aplt. App., Vol. I at 128-29.  For the second factor, the court discussed the detective's testimony against Ms. Gilliard, which included strong evidence that she was involved in multiple drug deals over an extended time.  For the third factor, the court generally referenced her bond report and her employment, criminal, and substance-abuse histories.  It highlighted her stealing and forgery convictions, her possible welfare fraud, and her failures to appear—deeming the latter to be indicative of her failure to comply with release conditions.  For the fourth factor, the court found Ms. Gilliard to be a safety risk because the charges involved repeated misconduct and that misconduct resulted in physical harm to a customer.  It next balanced these factors against the proposed release plan, which it acknowledged might provide her with an opportunity to receive substance-abuse treatment.  In the end, the district court found Ms. Gilliard to be both a flight risk and a danger to the community and denied the motion to revoke the detention order.

Ms. Gilliard now appeals.

## II.     Analysis

The charges against Ms. Gilliard establish a rebuttable presumption "that no condition or combination of conditions will reasonably assure [her appearance] as required and the safety of the community."  18 U.S.C. § 3142(e)(3)(A).  Ms. Gilliard bears the burden of producing evidence to rebut the presumption.  *See United States*

5

*v. Stricklin*, 932 F.2d 1353, 1354 (10th Cir. 1991) (per curiam). "Even if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain." *Id.* at 1355. At the same time, "the burden of persuasion regarding risk-of-flight and danger to the community always remains with the government." *Id.* at 1354-55.

We review the district court's ultimate pretrial detention decision de novo because it presents mixed questions of law and fact; however, we review the underlying findings of fact for clear error. *United States v. Cisneros*, 328 F.3d 610, 613 (10th Cir. 2003). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on review of the entire record, is left with the definite and firm conviction that a mistake has been committed." *United States v. Gilgert*, 314 F.3d 506, 515 (10th Cir. 2002) (brackets and internal quotation marks omitted). We review the district court's findings with significant deference, cognizant that "our role is not to re-weigh the evidence." *Id.* at 515-16 (internal quotation marks omitted).

We cannot find fault with the district court's determination that the government met its burden or the manner in which the court reached its decision. Ms. Gilliard characterizes the district court's application of the statutory factors as "shallow," "conclusory," and "terse." Aplt. Mem. Br. at 18-19. But the record shows that both the magistrate judge and the district court were well-informed and considered all four relevant factors in determining whether any release conditions will reasonably assure her appearance and the safety of others and the community:

6

"(1) the nature and circumstances of the offense charged"; (2) the weight of the evidence; (3) the person's history and characteristics; and "(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." § 3142(g). Indeed, most of the evidence relating to these factors came straight from uncontested portions of the pretrial services reports. In addition, "[t]he concern about safety is to be given a broader construction than the mere danger of physical violence," so the threat of continued drug trafficking can constitute a danger to the community. *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989) (per curiam).

Likewise, we are not persuaded by Ms. Gilliard's assertion that the district court did not discuss whether any conditions of release could be fashioned to satisfy its concerns that she is a flight risk and a danger to the community. As a threshold matter, Ms. Gilliard did not establish that space was even available at Majestic House. She expressed her belief that there was space at the initial detention hearing—s*ee* Aplt. App., Vol. I at 49 ("We do believe that bed space would be available were the court to release Miss Gilliard to that location.")—but the probation officer in Texas was unable to make contact with Majestic House to confirm that was true. Regardless, the record shows that both the magistrate judge and the district court considered and rejected Ms. Gilliard's proposal to be released to Majestic House.

Nor are we convinced that *United States v. Mobley*, No. 17-3234, ___ F. App'x ___, 2017 WL 6492842 (10th Cir. Dec. 19, 2017), or *United States v.*

7

*Gerkin*, 570 F. App'x 819 (10th Cir. 2014), has any bearing on this case. In *Mobley*, we remanded for additional findings of fact and an explanation of the reasoning behind the district court's pretrial detention decision. But there was no rebuttable presumption of detention based on the offense committed in *Mobley*, and the district court's analysis as to the § 3142(g) factors was woefully inadequate. And in *Gerkin*, the transcripts from the detention and review hearings were insufficient to allow for meaningful review: "The magistrate judge did not make any oral or written findings on the dispositive question," 570 F. App'x at 822, and the district court summarily affirmed, thereby perpetuating the error. This case presents an entirely different set of circumstances.

Here, the district court considered the evidence presented in conjunction with the relevant statutory factors and the detention presumption, and it articulated its reasoning in sufficient detail to allow for meaningful appellate review. Deferring to the district court's factual findings as we must, our review of the entire record does not leave us "with the definite and firm conviction that a mistake has been committed." *See Gilgert*, 314 F.3d at 515 (internal quotation marks omitted). Furthermore, we are satisfied that the court carefully weighed both parties' positions. We cannot reweigh the evidence on clear-error review, *see id.* at 515-16, and a factfinder's choice between two permissible views of the evidence cannot be clearly erroneous, *see Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

For these reasons, we affirm.

8

We grant Ms. Gilliard's Unopposed Motion to Seal Volume II of Appellant's Appendix, which contains the pretrial services reports. In referencing the contents of those reports herein, we have been careful to confine our discussion to information that is also contained in the unsealed transcripts and is thus publicly available.

> Entered for the Court
> Per Curiam